1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA,                    Case No. 14-cr-00120-EMC

8              Plaintiff,

9         v.                                      **ORDER DENYING DEFENDANT
                                                  REAL'S MOTION TO SUPPRESS**
10   EDUARDO ALVAREZ, *et al.*,
                                                  Docket No. 627
11            Defendant.

12

13        Defendant Rogelio Real filed a motion to suppress evidence seized during a search of Mr.

14   Real's residence. *See* Docket No. 627 ("Motion"). The Court heard argument on the Motion on

15   June 3, 2016. Having considered the parties' briefs and the arguments presented at the hearing,

16   the Court **DENIES** Mr. Real's Motion to Suppress.

17   A.    Factual Background

18        On March 11, 2014, Special Agent Alicia MacDonald of Homeland Security Investigations

19   ("HSI") applied for a warrant to search Mr. Real's residence. Mot. at 3. A magistrate judge

20   issued the requested search warrant that day, and the search was executed on March 12. *Id*.

21        The warrant attached a "List of Items to be Searched and/or Seized," which stated officers

22   would seize "gang-related clothing and accessories, such as, but not including, blue bandanas and

23   belts." Ex. A at SW-0082. The warrant also attached a "Protocol for Searching Devices or Media

24   that Store Data Electronically." *See* Ex. A at SW-0083 ("Protocol"). The Protocol requires the

25   government to "begin by ascertaining whether all of part of a search of a device or media that

26   stores data electronically . . . can be completed at the site within a reasonable time." *Id*. at ¶ 1. If

27   it cannot, "the government must determine whether all or part of the authorized search can be

28   completed by making a mirror image of . . . the contents of the device and then completing the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    search of the mirror image off site." *Id.* at ¶ 2.  If neither of these two steps is possible, then the

2    government may remove the device in order to complete its search.  *Id.* at ¶ 3.  The government

3    may also remove a device if "(1) removing the device is necessary to preserve evidence, or (2) the

4    device is contraband, a forfeitable instrumentality of the crime, or fruit of crime." *Id.*

5         During the search, officers seized a blue bandana.  Mot. at 3.  Officers also removed

6    electronic media and devices from the premises, including ten cellular telephones, a digital

7    camera, and "electronic media disc[s]" which Mr. Real said was done without first attempting to

8    search or mirror image those devices on site.  *Id.* at 3, 6.  Mr. Real also states that the Protocol

9    required the search of his devices to be completed within 30 days, which it was not.

10        With its Opposition, the Government filed several declarations.  In the first, Agent

11   MacDonald states that the phrase excluding belts and bandanas from the search "was an

12   inadvertent mistake," and "[t]he phrase should have read, 'such as, but not limited to, blue

13   bandanas and belts,' or 'including, but not limited to, blue bandanas and belts.'" *See* Docket No.

14   678 ("MacDonald Affidavit") ¶ 6.  Agent MacDonald also attached the wrong version of the

15   Protocol; she intended to attach the version that allowed for a 120-day period of review rather than

16   30 days.  *Id.* ¶ 8.

17        With regard to the search itself, Agent MacDonald states that "it would not be reasonable,

18   and likely not even possible," to search or mirror-image all devices on-site.  *Id.* ¶ 9.  Mr. Real's

19   residence was "considered [a] high-risk location," which "require[s] specially trained tactical

20   teams to enter the residence." *Id.*  Moreover, five searches were being executed at once and HSI's

21   San Francisco office does not have enough Computer Forensic Agents ("CFA's") to conduct that

22   many simultaneous searches.  *Id.*  Because of technical difficulties with various devices, Agent

23   MacDonald states that CFA's find on-site searching and mirror-imaging impossible "between 80%

24   and 90% of the time." *Id.*  Another agent submitted a declaration explaining that he attempted to

25   search the devices on-site, but "most, if not all of the cell phones and the digital camera had

26   batteries that were not charged sufficiently to search the devices on site." *See* Docket No. 679 ¶ 4.

27        Agent MacDonald also states that the Government requested and received an extension of

28   the review time.  MacDonald Affidavit at ¶ 11.

United States District Court

For the Northern District of California

B.    Analysis

Mr. Real does not challenge the warrant on probable cause grounds. *See generally*, Mot. Instead, he argues the evidence seized following the search should be suppressed because the searching officers exceeded the scope of the warrant, *id*. at 8-9, and because the officers did not follow the Protocol, *id*. at 5-8.

1.    Scope

Mr. Real argues that the blue bandana should be suppressed because it was excluded from the list of items that may be searched or seized. Mot. at 8. The Court addressed similar arguments in deciding Mr. Hernandez's motion to suppress, *see* Docket No. 731 ("Hernandez Order"), where it explained that officers are permitted to correct obvious errors in a warrant. *See United States v. Winkler*, No. 3:08-CR-14, 2008 WL 5136463, at *4 (E.D. Tenn. Dec. 4, 2008) (warrant not stale though ostensibly issued in 2006 and not acted on until 2007, where the 2006 date was a simple typo); *U.S. v. Hattrick*, 182 F. App'x 649 (9th Cir. 2006) (holding evidence did not need to be suppressed where the warrant's failure to include officers' authority to seize evidence was "a mere technical mistake"). For the reasons explained in the Hernandez Order, the Court concludes that the inclusion of the phrase "but not including" was obviously a typographical error (there was no reason to exclude blue bandanas and belts from seizure). The Motion to Suppress is **DENIED** as to the blue bandana.

2.    Protocol

Mr. Real also argues that the data from electronic devices should be excluded, because the searching officers failed to follow the Protocol. Mot. at 5-8. The Government argues that the Protocol was not violated, Opp. at 6-7, and that a violation of the Protocol would not amount to constitutional error, *id*. at 8.

With regard to the time it took to search the devices, the Court agrees with the Government. The Government appears to have properly requested an extension of the time allotted for searching the devices after they were seized. Because they sought and received an extension, the officers do not appear to have exceeded the scope of the protocol.

As to the removal of the devices from the premises, the Court finds the Government failed

3

**United States District Court**
For the Northern District of California

1    to comply with the protocol.  However, the Court also agrees with the Government that the

2    violations do not rise to the level of constitutional error, and so will not suppress.

3         The Government argues that a search does not need precautionary search protocols.  Opp.

4    at 6, 8.  While arguably it may not have been required to include the Protocol in the warrant as a

5    constitutional matter, the Government led the magistrate judge to believe that it would comply

6    with the Protocol.  *See generally*, Ex. A.  Because the magistrate was told that the officers would

7    remove devices from the search site only after attempting to mirror-image them, the officers

8    should have at least attempted to make a mirror image of those devices.  However, the

9    Government did not arrange for a CFA to be on-site.  While the Court understands there was no

10   CFA on-site because there simply are not enough CFA's in HSI's San Francisco office, it failed to

11   demonstrate that if the San Francisco office does not have enough CFA's, why it could not ask to

12   borrow a CFA from another office.  The officers perhaps could have scheduled their searches so

13   that there are enough CFA's to go on each search to which the Protocol applies.  More

14   importantly, the officers could have informed the magistrate judge of the situation, and asked the

15   magistrate to strike out those portions of the Protocol with which the government will not be able

16   to abide.[1]  Any of these solutions would have been preferable to promising the magistrate judge

17   the officers will perform tasks and then not complying.

18        However, though the officers violated the Protocol, this does not warrant suppression.  The

19   exclusionary rule is meant to be invoked for "exceptional reason[s], typically the protection of a

20   constitutional right."  *United States v. Harrington*, 681 F.2d 612, 615 (9th Cir. 1982) (refusing to

21   suppress evidence where it was "seized by an officer who, for some technical reason, should not

22   have conducted the search").[2]

23

---

24   [1] For this reason, the Government's argument regarding the high-risk nature of this search is
     unpersuasive.  If many searches are too high-risk to have a CFA present, the Government should
25   inform the United States District Court for the Northern District of California of this fact so that
     the courts in this District may adapt the Protocol accordingly.

26   [2] *See also United States v. Caceres*, 440 U.S. 741, 754-55 (1979) ("In view of our conclusion that
     none of respondent's constitutional rights has been violated here, either by the actual recording or
27   by the agency violation of its own regulations, our precedents enforcing the exclusionary rule to
     deter constitutional violations provide no support for the rule's application in this case."); *United*
28   *States v. Collins*, 764 F.2d 647, 655 (9th Cir. 1985) (refusing to exclude evidence, though it was

**United States District Court**
For the Northern District of California

1    The Ninth Circuit has addressed defectively executed warrants.  In *United States v. Ivers*,

2    the FBI took more than the ten days allotted by the Rules of Criminal Procedure to execute a

3    warrant to search the defendant's computer.  430 F. App'x 573, 575 (9th Cir. 2011).  The Ninth

4    Circuit affirmed the district court's decision not to suppress the evidence seized from the

5    computer, holding that "suppression [wa]s not appropriate because there [wa]s no constitutional

6    violation, no evidence that [the defendant] 'was prejudiced' by the delay, and no indication that

7    the officers acted in intentional and deliberate disregard of" the Rules of Criminal Procedure.  *Id*.

8    Similarly, in *United States v. Chen*, the government obtained a warrant to install "a" video camera

9    in a warehouse.  979 F.2d 714, 718 (9th Cir. 1992).  When the officers arrived, they realized that

10   one camera did not cover the entire square footage of the warehouse, and installed a second

11   camera to "fulfill the purposes of the surveillance warrant."  *Id*.  The Ninth Circuit held that this

12   was no more than a "de minimis intrusion," and the camera had not been installed in "flagrant

13   disregard" of the warrant's terms.  *Id*. at 718.[3]

14   Conversely, in *United States v. Comprehensive Drug Testing, Inc.*, law enforcement

15   learned that ten professional baseball players had tested positive for drugs in tests administered by

16   Comprehensive Drug Testing, Inc. ("CDT").  621 F.3d 1162, 1166, 1171-72 (9th Cir. 2010).  The

17   government obtained a warrant "limited to the records of the ten players as to whom the

18   government had probable cause," *id*., and the seized data was to be reviewed by computer

19   personnel rather than by case agents, *id*. at 1171.  However, the government seized and searched

20   the "records for hundreds of players ," *id*. at 1166, and the data was reviewed by case agents, *id*. at

21   1171.  The Ninth Circuit held "[t]his was an obvious case of deliberate overreaching by the

22   government in an effort to seize data *as to which it lacked probable cause*."  *Id*. at 1172 (emphasis

23

24   seized by Customs when the DEA should have conducted the search); *Herring v. United States*,
     555 U.S. 135, 144 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently

25   deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is
     worth the price paid by the justice system.") (refusing to exclude evidence where it was seized

26   based on a recalled warrant).

27   [3] While the Ninth Circuit suppressed evidence collected from a third camera, it did so because this
     camera "focused . . . on an area outside the warehouse," which was not included in the warrant.

28   *Id*.  The second camera "was never used to record any evidence," and so did not gather evidence
     beyond the scope of the warrant.  *Id*.

United States District Court
For the Northern District of California

1    added).  It affirmed the trial court's order that the illegally obtained data must be returned.  *Id.*

2          Here, the violation does not implicate circumvention of the probable cause requirement.

3    The seized cell phones and camera fell within the terms of the warrant and the search was

4    supported by probable cause.  *See* Ex. A at SW-0082 (the "List of Items to be Searched and/or

5    Seized" included "cellular telephones . . . and other devices and/or electronic media that can store

6    the indicia of membership").  While the warrant envisioned these items would be searched on-site

7    in ideal circumstances, it permitted the officers to remove them if circumstances were less than

8    ideal.  *See id.* at SW-0083 (allowing the officers to remove electronic devices if they could not be

9    searched or mirror-imaged on site).  The officers' deviation from the terms of the Protocol which

10   required an attempt to mirror on-site was not the "but-for cause of obtaining evidence."  *See*

11   *Hudson v. Michigan*, 547 U.S. 586, 592 (2006).  "Whether that preliminary misstep had occurred

12   *or not,*" the officers would have searched the cellular phones and camera.  *Id.* (emphasis in

13   original).  Because these items were seized pursuant to "a valid search warrant [that] entitled

14   officers to" seize them, "[r]esort to the massive remedy of suppressing evidence . . . is

15   unjustified."  *United States v. Hector*, 474 F.3d 1150, 1155 (9th Cir. 2007) (quoting *Hudson*, 547

16   U.S. at 599).

17         While there may be instances where a flagrant violation of the protocol might give rise to

18   the extreme remedy of suppression that remedy is not warranted here.  *See, e.g., United States v.*

19   *Hunter*, 13 F. Supp. 2d 574, 585 (D. Vt. 1998) (refusing to suppress, even though DEA agents

20   were participated in search of property in clear violation of protocol prohibiting their presence,

21   where the violation did not rise to the level of "flagrant disregard" of the warrant).  Although it

22   appears the Government could have done more to comply with the warrant or seek its

23   modification in conducting its search, it did try to power the devices on and found that most of the

24   devices seized could not be powered on.  *See* Docket No. 679 ¶ 4.  Also, Defendant has not

25   demonstrated there is an established pattern of non-compliance and disregard of search warrant

26   terms by the Government.

27         The Court is nevertheless disturbed by the actions taken here and failure to fulfill their

28   representations to the magistrate judge.  While the evidence will not be suppressed, should the

1   credibility of the officers be called into question at trial, defense counsel will be permitted to

2   cross-examine them about this violation, including their apparent violation of the Protocol.  Nor is

3   the Government immune to a suppression remedy in the future should a pattern of non-compliance

4   develop.

5          For the reasons stated above, the Court **DENIES** Defendant Real's motion to suppress.

6          This order disposes of Docket No. 627.

7

8          **IT IS SO ORDERED**.

9

10  Dated: June 10, 2016

11  _____

      EDWARD M. CHEN
12  United States District Judge

**United States District Court**
For the Northern District of California

7